NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0259n.06

Case No. 22-3897

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>TEAMSTERS LOCAL 20,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>JOHNS MANVILLE CORPORATION,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><strong>FILED</strong><br>Jun 07, 2023<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO<br><br>OPINION</td></tr>
</table>

Before: COLE, READLER, and DAVIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Believing his employer violated his union's collective bargaining agreement, Ramon LaBiche filed a grievance. Negotiations between LaBiche's employer and the union went nowhere. So the union notified the employer that it intended to submit the dispute to arbitration. When the employer refused arbitration, the union filed a motion to compel. The district court entered judgment for the union, ordering the employer to arbitrate. We now affirm.

I.

Johns Manville Corporation manufactures components used in industrial, commercial, and residential buildings. The company operates in Ohio, including several facilities in the town of Waterville. Production and maintenance employees at its Waterville sites are exclusively represented by the International Brotherhood of Teamsters Local Union No. 20 under a collective

bargaining agreement. The agreement's "Recognition Clause" memorializes the union's exclusive representation at "existing facilities, normal expansion to those facilities, and [at] any and all operations including the designation of any new Fiber Glass Plants at Waterville, Ohio."

Johns Manville contracted with two warehouses in the neighboring towns of Maumee and Perrysburg to store and ship company products. Johns Manville did not directly employ those working at the two warehouses, nor were they members of Local 20. Waterville employee and union member Ramon LaBiche believed this arrangement violated the Recognition Clause (and perhaps other agreement provisions). To formalize his complaint, LaBiche filed a grievance with Johns Manville. LaBiche demanded that the company "put in trained and qualified [] Teamster employees at [the] facilities" in Maumee and Perrysburg, "remove all of Johns Manville's products" from those warehouses, or "build or rent space somewhere else[,] making Teamster employees handle all J.M. products."

Johns Manville denied any violation of the Recognition Clause. When it did, the union notified Johns Manville that it would begin arbitration proceedings under the collective bargaining agreement's dispute settlement provision. That provision required Johns Manville and the union to arbitrate "any dispute involving the interpretation or alleged violation of the" agreement's terms. Johns Manville, however, refused to arbitrate on the grounds that no issue within the scope of the arbitration provision had been raised. At an impasse, the union filed a complaint in district court. The union invoked the Labor Management Relations Act's private cause of action to compel arbitration. *See* 29 U.S.C. § 185(a). Johns Manville answered, after which the parties filed cross-motions for summary judgment. The district court granted summary judgment to the union, compelling the parties to arbitrate the grievance. Johns Manville timely appealed the district court's order.

2

II.

In evaluating whether a party to a collective bargaining agreement may be compelled to arbitrate a dispute purportedly arising out of the agreement, we ask two questions. Have the parties memorialized a "valid agreement to arbitrate?" If so, does their dispute "fall[] within the substantive scope of that agreement?" If it does, the dispute is arbitrable. *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)), *cert. denied*, 2023 WL 3571521 (May 22, 2023) (Mem.). Here, the district court concluded that Johns Manville was required to arbitrate the issues LaBiche's grievance raised. Johns Manville challenges the district court's legal conclusions, which we review de novo. *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007) (applying summary judgment standards in this context).

As Johns Manville agrees that the collective bargaining agreement contains a valid arbitration clause, we limit our analysis to whether LaBiche's complaint falls within that clause's scope. On that front, it bears noting that the existence of an arbitration clause creates a presumption of arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). In turn, Johns Manville can overcome that presumption by demonstrating one of two circumstances: proof of an "express provision excluding" the grievance from arbitration; or "the most forceful evidence of a purpose to exclude the claim from arbitration." *Id.* (quotation omitted); *see also United Food & Com. Workers, Loc. 1995*, 51 F.4th at 202–03 (describing the presumption as "particularly applicable" where the arbitration clause is broad, such as one covering "grievances that concern the interpretation or application of this CBA" (cleaned up)); *United Steelworkers of Am.*, 474 F.3d at 279 (similar). The presumption's existence reinforces that the merits of an

arbitrable dispute are for the arbitrator; a court should not opine on merits questions in evaluating arbitrability. *AT&T Techs.*, 475 U.S. at 649–51.

In assessing whether two parties contracted to arbitrate a particular grievance, we often confront the tension between that task and our parallel obligation not to adjudicate the merits of an arbitrable grievance. *See id.* at 649–50. Illustrating this tension, our Court recently divided over the arbitrability of a grievance concerning whether a union could assert an exclusive right to represent employees at certain Knoxville-area Kroger facilities. *United Food & Com. Workers, Loc. 1995*, 51 F.4th at 201. Our task there was to determine if Kroger's disavowal of any employment relationship with the staff in question rendered the dispute outside of the parties' contract to arbitrate. *Id.* at 209–10 (Larsen, J., dissenting). The dissenting opinion in *United Food and Commercial Workers* thoughtfully analyzed the Supreme Court's opinion in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991), concluding that several of our sister circuits had correctly read that decision to require limited interpretation of the agreement in deciding arbitrability, even if that interpretation touches on the merits of the underlying dispute. *See United Food & Com. Workers, Loc. 1995*, 51 F.4th at 213–14 (Larsen, J., dissenting) (collecting cases).

Fortunately, today's case is easier to decide. The panel's disagreement in *United Food and Commercial Workers* seemingly turned on the operation of Federal Rule of Civil Procedure 12(c), a wrinkle absent here. *Id.* at 205 n.3 (maj. op.); *id.* at 209–10 (Larsen, J., dissenting). Equally true, we are constrained by the majority opinion in *United Food and Commercial Workers*. So settled principles resolve this appeal. LaBiche's claim is that Johns Manville violated the Recognition Clause when it contracted with a company using non-union labor to perform alleged union work. That manner of dispute safely falls within the arbitration provision's confines. That provision, remember, covers "any dispute involving the interpretation or alleged violation" of the

collective bargaining agreement. *See United Steelworkers of Am.*, 474 F.3d at 279 (analyzing a similarly worded provision). And grievances challenging an employer's decision to subcontract out work that the union might ordinarily be expected to perform, we have held, falls in the heartland of arbitration provisions covering the "interpretation" or "application" of a collective bargaining agreement. *Teamsters Loc. Union No. 89 v. Kroger Co.*, 617 F.3d 899, 905–06 (6th Cir. 2010). Of course, another provision in the agreement, perhaps one more precise in nature, could serve to remove the matter from the arbitrator's grip. But Johns Manville does not direct us to any part of the agreement that does so, nor does it cite "forceful evidence" to counter our conclusion. *AT&T Techs.*, 475 U.S. at 650.

Johns Manville does offer other rebuttals. But none changes our conclusion. First, the company reads the Recognition Clause to impose geographic and other limitations on exclusive union representation. That reading may turn out to be correct. But the issues Johns Manville raises go to the substance of the parties' dispute, meaning they are properly directed to the arbitrator, not us. *Cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Next, Johns Manville contends that an arbitrator could not award the relief LaBiche seeks under the terms of the agreement. A challenge to the arbitrator's grant of relief as ultra vires, however, customarily arises via a post-arbitration motion to vacate the arbitration award. 9 U.S.C. § 10; 29 U.S.C. § 185(a); *see Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022). True, in an unpublished decision, we once denied a motion to compel arbitration on the grounds that an arbitrator could not award the relief sought. *O-N Minerals Co. v. Int'l Bhd. of Boilermakers*, 563 F. App'x 380, 386 (6th Cir. 2014). That case involved a union grievance regarding the employer's pension fund. After the fund refused to accept the employer's contributions, the union demanded that those contributions be added to

union members' paychecks. We deemed it impossible for an arbitrator to order that relief without contravening the collective bargaining agreement (which included fixed wage schedules) and denied the union's motion to compel on that basis. *Id.*

As a general rule, however, arbitrators have "considerable flexibility when formulating remedies." *Econ. Linen & Towel Serv., Inc. v. Int'l Bhd. of Teamsters, Teamsters Loc. Union No. 637*, 917 F.3d 512, 515 (6th Cir. 2019) (cleaned up). Nothing in the agreement at issue here suggests that the universe of conceivable relief is as cabined as in the *O-N Minerals* agreement. To the contrary, federal courts have upheld a variety of remedies ordered by arbitrators in matters involving the same type of grievance—a dispute over subcontracting. *See, e.g.*, *N. New England Tel. Operations LLC v. Loc. 2327, Int'l Bhd. of Elec. Workers*, 735 F.3d 15, 20, 24 (1st Cir. 2013) (upholding an award requiring the company to return work transferred to a subcontractor); *Folger Coffee Co. v. Int'l Union*, 905 F.2d 108, 109 (5th Cir. 1990) (sustaining similar injunctive relief). So an arbitrator, should it find a contractual misstep by Johns Manville, could imaginably fashion a responsive remedy. *Cf. Teamsters Loc. Union No. 89*, 617 F.3d at 905–06 (affirming an order compelling arbitration where the grievance concerned a contracting dispute, as "contracting out work . . . is grist in the mills of the arbitrators" (cleaned up) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584 (1960)). Again, those issues are left to the arbitrator to resolve in the first instance.

*     *     *     *     *

We affirm the judgment of the district court.